**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

**LUZ GONZALEZ,**

**Plaintiff,**

**- against -**

**THE CITY OF NEW YORK DEPARTMENT OF PARKS AND RECREATION, and ADRIAN BENEPE, as Commissioner of The City of New York Department of Parks and Recreation, MICHAEL BLOOMBERG, as Mayor of The City of New York,**

**Defendants.**

---------------------------------------------------------------X

**Index No. 09 Civ. 2361 (FB) (JMA)**

**ECF CASE**

**AMENDED COMPLAINT**

Plaintiff Demands a Jury

Plaintiff, Luz Gonzalez, by and through her attorneys, THE LAW OFFICES OF FAUSTO E. ZAPATA, JR., P.C., upon information and belief, complains of Defendants as follows:

## NATURE OF THE ACTION

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq., and to remedy violations of state common law based upon the pendent jurisdiction of this Court pursuant to Gibb, 383 U.S. 715 (1966), and 28 U.S.C. §1367, and under the City and State of New York, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of being discriminated and retaliated against by Defendants.

2. Plaintiff further complains pursuant to the laws of the State of New York and the Administrative Code of the City of New York, seeking damages to redress the

injuries Plaintiff has suffered as a result of being discriminated against on the basis of her gender, national origin, and race.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction pursuant to 42 U.S.C. §3601, 28 U.S.C. §1331, 28 U.S.C. §1367 and pendent jurisdiction thereto.

4. Venue is in the proper district based upon the acts of discrimination, which occurred in Queens County, within the Eastern District of New York. 28 U.S.C §1391(b).

**PARTIES**

5. Plaintiff Luz Gonzalez is a Puerto Rican woman and also a resident of Queens County in New York State.

6. Defendant City of New York Department of Parks and Recreation (hereinafter, "DPR") is a mayoral agency of The City of New York.

7. DPR has offices at The Arsenal, Central Park, 830 Fifth Avenue, New York, NY 10065.

8. At all relevant times, Defendant Adrian Benepe was the Commissioner of the DPR.

9. At all relevant times, Defendant Michael Bloomberg was the Mayor of The City of New York.

## MATERIAL ALLEGATIONS

10. On or about April 9, 2008, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") alleging that she was discriminated on the basis of sex, and race, and national origin, and she also filed a charge of retaliation in connection to Plaintiff's lawful activities protected under Title VII.

11. The EEOC referred to Plaintiff's complaint as Charge No.: 520-2008-0819N.

12. On or about September 10, 2008, Plaintiff filed a charge of discrimination on the basis of race, sex, and a charge of retaliation, against her employer with the EEOC.

13. On or about March 9, 2009, the Equal Employment Opportunity Commission sent Plaintiff, via regular mail, a right to sue letter in connection to her charges of discrimination and retaliation.

14. Plaintiff started working for DPR in 2001 as a Clerical Associate. Initially, her primary duties included, in part, the task of entering data into a computerized database.

15. Plaintiff was stationed at the Flushing Garage ("Garage") located in Queens County, State of New York. Plaintiff's supervisor was Michele Griffin ("Griffin").

16. On or around the fall of 2007, Griffin became romantically involved with a coworker of Plaintiff, Rohan Bloomfield ("Bloomfield").

17. Griffin and Bloomfield used to lock themselves in Griffin's office for long periods of time for non-business related purposes.

18. Plaintiff's work area was directly outside of Griffin's office.

19. Griffin and Bloomfield would engage in sexual conduct in Griffin's office during work hours.

20. Plaintiff and some of her female coworkers had no designated place to have their lunch or take their breaks at the Garage, and as such it became customary for both the male and female employees to meet for lunch at the lounge area in the men's locker room since workers did not normally change during lunch hours.

21. On or about December 31, 2007, Griffin brought beer to work.

22. Griffin, along with Plaintiff's co-workers, Bloomfield, Steve Codd ("Codd") and Robert Vandermaas ("Vandermaas"), consumed the beer.

23. After drinking, Vandermaas and Codd went to the lounge area.

24. Later, Plaintiff went in the lounge and she sat near Codd.

25. Vandermaas at one point said, "Let's lock the door and have a threesome", whereupon he stood close to Plaintiff and blocked her from leaving.

26. Vandermaas then pulled out his penis and grabbed a magnifying glass from the table and said, "You need a magnifying glass to look at it", referring to his penis.

27. At this point, Vandermaas positioned himself in such a way that his penis was close to Plaintiff's face.

28. This lewd and egregious conduct was unwelcome to Plaintiff and she objected to Vandermaas's conduct.

29. When Vandermaas finally moved out of the way, Plaintiff quickly ran out of the lounge area.

30. After being sexually harassed by Vandermaas, the terms and conditions of Plaintiff's employment were permanently changed.

31. On or about January 1, 2008, Plaintiff complained to Griffin about Vandermaas exposing his genitals at the workplace.

32. Griffin then assured Plaintiff that she would take care of the situation.

33. Prior to Plaintiff's complaint to Griffin, Dionne Beckett (hereinafter "Beckett"), Plaintiff's coworker, complained to Griffin about Vandermaas exposing himself and masturbating in her presence.

34. After Plaintiff complained to Griffin, DPR failed to take any corrective steps and Plaintiff was still required to work in the same general work location as Vandermaas.

35. At around the time that Plaintiff was sexually harassed by Vandermaas, her duties included, in part, an obligation to prepare the weekly schedules of some DPR mechanics, which meant that she still had to interact with Vandermaas.

36. Furthermore, Plaintiff was required to attend meetings in the Garage area after she complained that Vandermaas had sexually harassed her when she was in the garage.

37. After Vandermaas learned of Plaintiff's complaint, he told Plaintiff that she better not say anything about his conduct because his job was on the line. Plaintiff was extremely fearful and threatened by Vandermaas's warning.

38. Plaintiff suffered significant emotional pain and suffering as a result of being sexually harassed in the workplace.

39. On or about January 23, 2008, Plaintiff complained with DPR's Equal Employment Officer Judy Poole ("Poole") about Vandermaas's conduct.

40. As a result of Plaintiff's sexual harassment complaints, she was subjected to retaliation at the workplace.

41. After Plaintiff complained of sexual harassment, Griffin constantly reminded Plaintiff that she was only a provisional employee who could be fired for any reason.

42. At the time, Plaintiff had a provisional civil service status and she took Griffin's threat to mean that unlike permanent civil servants, Plaintiff could be fired for any reason without notice.

43. Griffin also warned Plaintiff that "what happens in-house, stays in-house" when addressing Plaintiff's complaints against Vandermaas.

44. After Plaintiff complained of sexual harassment, Griffin retaliated against Plaintiff by threatening her with a transfer to a different work location.

45. On or about March 2008, DPR posted a sign in the Garage informing all its employees that women were no longer permitted to use the men's locker room for any purposes, including eating lunch.

46. On or about March 7, 2008, Plaintiff was transferred out of the Garage and into DPR's Olmstead facility at Flushing Meadow Park.

47. After the transfer, Plaintiff's terms and conditions of employment were further changed in that Plaintiff had her computer and office taken from her, whereas prior to the transfer, she had both.

48. During this time, Vandermaas was not disciplined for his conduct.

49. Plaintiff again wrote to DPR on or about March 28, 2008 stating again that Vandermaas exposed his genitals and positioned it near her face while blocking the door.

50. Despite the fact that Plaintiff complained on various occasions of being sexually harassed by Vandermaas, no action was taken against Vandermaas.

51. After complaining of being sexually harassed by Vandermaas, Plaintiff was transferred out of her work location and threatened with the prospect of having her employment terminated.

52. On or about March 2008, Plaintiff met with two investigators from The City of New York Department of Investigation and she told them how she had been sexually harassed by Vandermaas.

53. On or about March 2008, Plaintiff wrote a letter to DPR complaining, again, about the sexual harassment and retaliation that she was subjected to at the workplace.

54. On or about April 10, 2008, Plaintiff filed met with four investigators from DPR's Advocate's Office and Plaintiff was questioned in connection to Griffin's conduct in the workplace.

55. During this meeting, Plaintiff explained to the investigators that she sat very close to Griffin's office and knew that Bloomfield spent a lot of time at Griffin's office during working hours. She also told them that Griffin and Bloomfield usually locked the door and would remain behind closed doors for long periods of time.

56. Plaintiff also told the investigators that on one occasion Griffin disclosed to Plaintiff that she did in fact have a sexual relationship with Bloomfield but that it was over. Plaintiff also described a physical altercation between Griffin and Bloomfield that she overheard coming from Griffin's office. Gonzalez explained that there was a loud argument and glass was broken. When the door opened, Griffin threw a piece of wood that almost hit Gonzalez.

57. At a certain point, the Investigators asked Plaintiff about the letter she sent DPR in March 2008, however no questions were answered before it was disclosed that the

investigators were not trained to conduct equal employment discrimination investigations. Plaintiff stated that she wanted to speak to investigators trained in equal employment opportunity investigations. At that time, Plaintiff was referred to Poole.

58. On or about April 10, 2008, Plaintiff met with Poole and Poole disclosed to Plaintiff that although she had spoken to Plaintiff about Beckett's complaints of sexual harassment against Vandermaas in January 2008, and she became aware that Vandermaas exposed himself to Plaintiff at that time, she never treated Plaintiff's January 2008 complaints as an official complaint of sexual harassment.

59. Poole then tried to persuade Plaintiff to file a new complaint of discrimination on April 10, 2008, but Plaintiff reminded Poole that she had already complained. It appeared to Plaintiff that Poole disregarded her complaint of sexual harassment and then tried to cover it up by asking Plaintiff to file a new complaint after one had already been filed.

60. On or about April 12, 2008, Plaintiff filed a complaint with the police department against Vandermaas because DPR failed to investigate Plaintiff's complaints.

61. On or about April 14, 2008, Plaintiff was asked to sit for a follow-up interview with The City of New York Department of Investigation and again she told the investigators that she had been sexually harassed by Vandermaas.

62. On or about April 2008, Vandermaas was arrested in connection to Plaintiff's criminal complaint.

63. On or about April 15, 2008, Plaintiff's supervisors Griffin and Mahanth Joishy (hereinafter "Joishy") lowered Plaintiff's performance evaluation rating. It should

be noted that during the previous five (5) years Plaintiff consistently received good ratings.

64. After receiving a lowered performance evaluation, Plaintiff was told by Griffin that she did not want to see her talking to her coworkers, in an effort to alienate Plaintiff in the workplace. Moreover, Griffin told Plaintiff that Plaintiff did not have any friends at DPR. In all the years that Plaintiff had worked at DPR, she had never been ordered not to talk to her coworkers.

65. On or about April 30, 2008, the DPR's Assistant Chief of Operations in Queens, Keith Kerman ("Kerman") called Plaintiff to a meeting, and stated that he constantly heard her name come up with regard to scandals at work; that she had lost credibility and suggested that she was at fault in the Garage incident involving Vandermaas.

66. Plaintiff was made to feel that she was being blamed by DPR for being a victim of Vandermaas's sexual harassment.

67. As a result of DPR's failure to take corrective action in connection to Vandermaas's conduct and the retaliation that Plaintiff was subjected to, Plaintiff was left with no choice but to seek employment elsewhere.

68. Plaintiff was thus constructively discharged on or about August 2008.

69. On or about September 10, 2008, Plaintiff filed a charge of retaliation.

70. Plaintiff has suffered extreme emotional pain and suffering as a result of being discriminated and retaliated against in the workplace.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

72. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)(1), makes it unlawful employment practice for an employer:

> "to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's... race... sex, or national origin."

73. Defendants engaged in unlawful discriminatory practices prohibited by 42 U.S.C. §2000e-2 by discriminating against Plaintiff in the terms and conditions of employment, creating a hostile work environment, and otherwise discriminating against Plaintiff because of her race, sex, and national origin.

**AS A SECOND CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

75. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> (1) to... discriminate against any of his employees... because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

76. Defendants engaged in unlawful employment discriminatory practices as prohibited by 42 U.S.C. §2000e-3(a) by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to unlawful employment practices of Defendants.

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER STATE LAW**

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

78. New York Executive Law §296 provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer...because of... race... color, national origin... sex... of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation in terms, conditions or privileges of employment.

79. Defendants engaged in unlawful discriminatory practice by discriminating against Plaintiff because of her sex.

80. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

**AS A FOURTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER STATE LAW**

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

82. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practice forbidden by this article.

83. Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**AS A FIFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

85. The Administrative Code of the City of New York §8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived... race... color, national origin, gender... status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

86. Defendants engaged in unlawful discriminatory practices in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, a hostile work environment, and otherwise discriminating against plaintiff because of Plaintiff's gender.

87. Plaintiff hereby makes a claim against Defendants under all the applicable paragraphs of the New York City Administrative Code, Title 8.

**AS A SIXTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89. The New York City Administrative Code, Title 8, §8-107(1)(e) provides that it shall be an unlawful discriminatory practice:

> For an employer... to discharge... or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter...

90. Defendants engaged in unlawful discriminatory practice in violation of the New York City Administrative Code, Title 8, §8-107(1)(e) by retaliating against Plaintiff

because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

91. Plaintiff hereby makes a claim against Defendants under all the applicable paragraphs of the New York City Administrative Code, Title 8.

**AS A SEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

93. Section 8-107(13) entitled Employer liability for discriminating conduct by employee, agent or independent contractor, provides:

> a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivision one and two of this section.
> b.An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
> 1. the employee or agent exercised managerial or supervisory responsibility; or
> 2.the employer knew of the employee's or agents' discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge or an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
> 3.the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

94. Defendants violated the above section as set forth herein.

95. Plaintiff hereby makes a claim against Defendants under all the applicable paragraphs of the New York City Administrative Code, Title 8.

**INJURY AND DAMAGES**

96. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer severe and extreme mental and emotional distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, anxiety, injury to person, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, New York State common law, New York State Executive Law §296 et. Seq. and The New York City Administrative Code Title 8, §8-107 et Seq.; and that the Defendants harassed, discriminated against, and retaliated against Plaintiff on the basis of sex, color, national origin, and race and engaged in retaliation.

B. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

C. Granting Plaintiff a permanent injunction enjoining Defendants, its agents, successors and employees, and those acting in behalf of Defendants, from continuing to violate Plaintiff's civil rights;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

**JURY DEMAND**

Plaintiff hereby demands a jury of all issues to be tried.

Date: August 20, 2009
New York, NY

The Law Offices of
Fausto E. Zapata, Jr., P.C.

By: ______________________
Fausto E. Zapata, Jr. (FZ 4957)
Attorneys for Plaintiff
277 Broadway, Suite 501
New York, NY 10007
Tel. (212) 766-9870